# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN B., <br><br> Plaintiff, <br> v. <br><br> ANDREW M. SAUL, <br> Acting Commissioner of <br> Social Security, <br><br> Defendant. | Case No. 20-cv-1908 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian B.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits and Supplemental Security Income Benefits. Brian asks the Court to reverse and remand the ALJ's decision, and the Commissioner moves for its affirmance. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. BACKGROUND

Brian worked as a truck driver for many years before injuring his left shoulder in July 2016. (R. 40-42). Brian testified that he was driving on a rough road with his arm on the window when he drove over a large pothole. *Id.* at 42-43. According to Brian, within a few hours, his left shoulder felt like it was going to explode. *Id.* Brian began treatment for a possible labral tear of the left shoulder and went on long term disability. *Id.* at 43, 342, 577-78. Brian was later diagnosed

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name or alternatively, by first name.

with, among other things, brachial plexus disorder, cervical radiculopathy, and carpal tunnel syndrome. *See, e.g.*, *id.* at 620. In addition to his shoulder and neck impairments, Brian suffered from morbid obesity, weighing over 500 pounds during the relevant time period. *Id.* at 622.

Brian applied for disability insurance benefits in February 2017, alleging disability beginning July 24, 2016. (R. 231). Brian's claim was initially denied on April 5, 2017, and upon reconsideration on June 26, 2017. *Id*. at 117, 143. Upon Brian's written request for a hearing, he appeared and testified at a hearing held on February 26, 2019 before ALJ Deborah Giesen. *Id.* at 31-92. At the hearing, the ALJ heard testimony from Brian, his wife, and a vocational expert, Heather Mueller. *Id.*

On April 11, 2019, the ALJ issued a decision denying Brian's application for disability benefits. (R. 14-24). The opinion followed the required five-step evaluation process. 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Brian had not engaged in substantial gainful activity from July 24, 2016, the alleged onset date, through December 31, 2021 the last insured date. *Id.* at 17. At step two, the ALJ found that Brian had the severe impairments of morbid obesity, obstructive sleep apnea, mild arthritis (left shoulder joint), chronic cervical radiculopathy, carpal tunnel syndrome (left upper extremity), and chronic obstructive pulmonary disease. *Id.* at 17. At step three, the ALJ determined that Brian did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 404.1526, 416.920(d), 416.925, 416.926). *Id.* at 17-18.

The ALJ then concluded that Brian retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except:

> no working around unprotected heights, open flames, or unprotected dangerous machinery; no climbing ladders, ropes, or scaffolds;

> occasional balancing, stooping, and climbing ramps and stairs; no kneeling crouching, or crawling; no concentrated exposure to dusts, fumes, gases, or poor ventilation; frequent reaching and handling with non-dominant left upper extremity.

(R. 18). Based on this RFC, the ALJ determined at step four that Brian could not perform his past relevant work as a tractor trailer truck driver and tanker truck driver. *Id.* at 22. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Brian could perform. *Id.* at 23-24. Specifically, the ALJ found Brian could work as a call out operator, document preparer, or address clerk. *Id.* Because of this determination, the ALJ found that Brian was not disabled. *Id.* at 24. The Appeals Council denied Brian's request for review on February 6, 2020, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on

Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

The ALJ found Brian not disabled at step five of the sequential analysis because he retains the RFC to perform other work that exists in significant numbers in the national economy. Brian argues that the ALJ failed to properly weigh the medical opinions in forming her RFC opinion. Specifically, Brian argues that the ALJ erred in her handling of the opinions of Brian's treating neurologist, Dr. Michael Boyd. Doc. [19] at 7. The Court agrees.[2] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

Generally, the regulations favor medical opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician is therefore

---

[2] Because the Court remands on this basis, the Court does not address Brian's other arguments.

entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 874, 874 n.1 (7th Cir. 2018) (for claims filed before March 27, 2017, an ALJ "should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record.").

Additionally, an ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell*, 627 F.3d at 306 (internal quotation marks and citations omitted); *see also Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). Those reasons must be "supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citation omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

In short, while the ALJ need only "minimally articulate" her reasons when determining whether to give controlling weight to a treater's opinion, "[t]he ALJ must still support [her] conclusions with 'substantial evidence,' and in the context of rejecting a treater's opinion, must provide 'good reasons.'" *Stocks v. Saul*, 844 F. App'x 888, 892 (7th Cir. 2021) (citations omitted).

In May 2017, Brian's insurance case manager, Jessica Stein, recommended the obtaining of a "Musculoskeletal Questionnaire . . . for an update on the claimant's condition and treating providers." *Id.* at 342. On January 19, 2018, Brian's treating neurologist, Dr. Boyd, filled out a

5

Standard Insurance Company questionnaire titled "Physician's Report – Musculoskeletal." *Id.* at 339-341. In that form, Dr. Boyd opined that Brian had cervical radiculopathy on the left and morbid obesity, which presented symptoms of left arm weakness, numbness, and pain. *Id.* at 339. According to Dr. Boyd, Brian was unable to return to work because he could not "grasp/climb/lift in excess of 10 lb. with left arm" and because Brian was "unable to use arm consistently to climb into truck cab, drive/turn wheel." *Id.* Dr. Boyd further stated that Brian could sit continuously; stand, walk, balance, and bend only occasionally; and that Brian could not use his left arm to reach at shoulder level, reach above shoulder level, or drive. *Id.* at 340. Dr. Boyd also opined that Brian could frequently (34%-66% of the workday) lift, carry, and push/pull no more than 1-10 pounds with his left arm. *Id.* In response to a question regarding whether the "[i]ndividual can use hands for repetitive, frequent, or occasional action such as . . . Simple Grasping[,] Pushing/Pulling [,] Fine Manipulation [, and] Finger Dexterity," Dr. Boyd checked the pertinent boxes displaying Brian's inability to use his left hand for any of those actions. *Id.* At the end of the form, Dr. Boyd indicated that he had been treating Brian since September 2016, that Brian's morbid obesity complicated Brian's recovery and return to work, and that he would corroborate his patient's complaints. *Id.* at 341.

In weighing Dr. Boyd's January 2018 musculoskeletal questionnaire opinion, the ALJ purportedly discounted Dr. Boyd's opinion as follows:

> In a January 2018 form, Dr. Park opined the claimant could lift up to ten pounds frequently with the left upper extremity and sit continuously, but could not use his left hand for 'repetitive, frequent or occasional action[s]; and could not 'consistently' perform postural activities (Ex. 12E/6-7). The compound nature of the assessment of the claimant manipulative limitations renders it ambiguous and the postural limitations are not fully supported by objective findings. This form opinion is therefore given limited weight, though it is partially consistent with the claimant's residual

6

>functional capacity for sedentary work, with frequent limitations to left handed reaching and handling.

(R. 21).

The ALJ's three-sentence analysis of Dr. Boyd's January 2018 opinion falls short in several respects. To begin, the ALJ mistook Dr. Boyd's opinion for that of another doctor, Dr. Jesse Park, who the ALJ elsewhere described simply as "another provider." (R. 19, 21). As a result, the Court cannot say that the ALJ actually weighed the January 2018 opinion "based on the length, frequency, nature, specialty, and extent of the treatment relationship," that Dr. Boyd had with Brian. *Stocks*, 844 F. App'x at 892 (citations omitted). That is, the ALJ's analysis of Dr. Boyd's musculoskeletal opinion does not illustrate that she weighed the opinion in light of Dr. Boyd's specialization in neurology, nor the fact that Dr. Boyd made this opinion after treating Brian's cervical radiculopathy for nearly two years—treatment that included frequent physical examinations, the ordering and review of labs and medical imaging, the review of physical therapy records, and the management of Brian's pain medications. (*See, e.g.*, R. 620-29, 719-21). In fact, the ALJ's analysis fails to touch on any of the treating physician factors, with the exception of the consistency factor, which is problematic for the reasons discussed below. Thus, the ALJ's consideration of Dr. Boyd's January 2018 opinion falls short, in part, due her failure to weigh the opinion based on the treating physician factors.

The Commissioner concedes that the ALJ incorrectly attributed Dr. Boyd's opinion to Dr. Park but contends that the error was harmless because the ALJ considered the opinion as a treating physician's opinion. Doc. [21] at 10. From the outset, the Court disagrees because the ALJ's fleeting discussion, which does not even mention most of the treating physician factors, does not show that the ALJ considered the January 2018 opinion as a treating physician's opinion. At any rate, the regulations require that the ALJ weigh a treating physician's opinion in light of the "the

length, frequency, nature, specialty, and extent of the treatment relationship" of the treating physician at hand, not just any treating physician. *Stocks*, 844 F. App'x at 892 (citations omitted). Put another way, the Court cannot be confident here that the ALJ considered the January 2018 opinion based on the treating physician factors, which are specific to the opining treating physician, when the ALJ attributed the opinion to Dr. Park instead of Dr. Boyd. The application of those factors to Dr. Boyd could have caused the ALJ to give greater weight to the January 2018 opinion, as Dr. Boyd was the specialist in charge of treating Brian's cervical radiculopathy and left upper extremity impairments, whereas Dr. Park was Brian's internist who treated Brian's impairments more globally. (*See, e.g.*, R. 576, 582).[3]

The ALJ, moreover, failed to provide good reasons for discounting the January 2018 opinion. The ALJ's first reason for giving limited weight to the opinion was that the "compound nature of the assessment of the claimant['s] manipulative limitations renders it ambiguous[.]" (R. 21). As an initial matter, it is not clear what the ALJ means by "compound nature of the assessment," and the ALJ does not elaborate. The Commissioner interprets the ALJ's "compound nature" critique to refer to Dr. Boyd's finding that Brian could not use his left hand for simple grasping, pushing/pulling, fine manipulation, or finger dexterity at the "repetitive, frequent, or occasional" levels. Doc. [21] at 10. As best as the Court can tell, the Commissioner claims that the ALJ took issue with Dr. Boyd's failure to select a single frequency for left hand manipulation, i.e., Dr. Boyd should have found Brian capable of either repetitive, or frequent, or occasional action, rather than opining that Brian could not use his left hand at any of those frequencies. Assuming that the Commissioner is correct in thinking that the ALJ was criticizing Dr. Boyd's

---

[3] There is also no mention of neurology or Dr. Boyd's treatment relationship in the ALJ's analysis that would demonstrate that the ALJ knew it was Dr. Boyd's opinion but simply made a typographical error in writing in Dr. Park's name.

conclusion that Brian could not use his left hand "for repetitive, frequent, or occasional action such as . . . Simple Grasping[,] Pushing/Pulling [,] Fine Manipulation [, and] Finger Dexterity," *see id.* at 340, that statement is unambiguous. The form simply asked Dr. Boyd, yes or no, if Brian could use his left hand for "repetitive, frequent, or occasional action[s]," such as grasping, pushing/pulling, fine manipulation, and finger dexterity. *Id.* Dr. Boyd selected "no" with respect to Brian's left hand, and "yes" with respect to Brian's right hand. *Id.* The Court sees no ambiguity with respect to the statement and finds that the ALJ's "compound nature" reason is confusing and fails to constitute a good reason for giving limited weight to Dr. Boyd's other left upper extremity findings.

The ALJ's second reason, that "the postural limitations are not fully supported by objective findings," fares no better. Although that statement appears directed at the consistency of the opinion with the rest of the medical record, *see* 20 CFR §§ 404.1527(c)(4), 416.927(c)(4), the ALJ failed to offer any explanation of how the January 2018 opinion was at odds with the record, so the Court cannot conduct a meaningful review of the ALJ's "fully supported" conclusion. *See Steele*, 290 F.3d 940; *Veronica H. v. Saul*, No. 18 C 7447, 2019 WL 3935039, at *3 (N.D. Ill. Aug. 20, 2019). Furthermore, the ALJ did not find that the January 2018 opinion was inconsistent with the record, only that it was "not fully supported." (R. 21). Indeed, the ALJ found the January 2018 opinion to be "*partially consistent* with the claimant's residual functional capacity[.]" (R. 21 (emphasis added)). Yet treating physician opinions for claims filed before March 27, 2017 that are: (a) not inconsistent with the record; and (b) well-supported by medically acceptable clinical and laboratory diagnostic techniques, are entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). And SSR 96-2p instructs that "[f]or a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not

9

necessary that the opinion be *fully supported* by such evidence." SSR 96-2P, 1996 WL 374188 (S.S.A. July 2, 1996) (emphasis added). Thus, the ALJ's unsupported statement that the January 2018 opinion was not "fully supported" by the evidence is not a good reason for discounting the opinion either.

The Commissioner directs the Court to the ALJ's conclusion—from earlier in her decision—that Brian's complaints of extreme left arm pain were unsupported by the evidence. *See* Doc. [21] at 10. Even if the ALJ were referring to that discussion when she stated that the January 2018 opinion was not "fully supported," the Court finds that that determination does not provide a good reason for discounting Dr. Boyd's opinion. This is because the ALJ based that finding on her opinion that Brian's left arm impairment improved, however the ALJ's improvement assessment lacks support in the record. (R. 20). The ALJ claims that Brian reported improvement in December 2016 and was released to work after multiple functional evaluations confirmed this improvement. *Id.* The record actually shows that Brian was not given the okay to work by all of his doctors, and that any improvement Brian felt was temporary at best. True, Brian was discharged from physical therapy on December 8, 2016, and the next day Dr. Park did assess Brian's neck pain as "mostly resolved," and gave him approval to return to work without restrictions. *Id.* at 388, 647. However, Brian presented to Dr. Park a mere 10 days later, reporting atrophy and weakness in his left bicep with recurrence of numbness of left fingers. *Id.* at 387. Brian told Dr. Park that he had not been able to return to work because he was awaiting clearance from his neurologist. *Id.* Dr. Park assessed Brian with cervical radiculopathy and referred Brian to additional physical therapy. *Id.* On December 30, 2016, Brian saw Dr. Boyd for a follow up appointment. *Id.* at 620. Dr. Boyd reviewed Brian's physical therapy discharge summary from December 8, 2016 with Brian and conducted a physical examination, which revealed decreased

rotation in left lateral spine rotation and a positive Spurling's test on the left, as well as reduced reflexes in Brian's biceps. *Id.* at 621. Dr. Boyd assessed Brian as having brachial plexus disorder and stated that he could not give Brian medical clearance to return to work, writing "[t]he limited evaluation in the office does not allow me confidence that his current condition would enable his safe operation of a commercial vehicle." *Id.* Dr. Boyd recommended that Brian undergo a formal functional capacity evaluation. *Id.*

The medical records and functional capacity evaluations that followed overwhelmingly supported Brian's limitations in his left upper extremity. While one physician consulted by Brian's insurance company stated in February 2017 that Brian could return to work as of November 2016, *id.* at 359, the insurance case analyst subsequently requested a review from a different physician. *Id.* at 356. That review, and every functional capacity opinion that followed, including the opinions from the state agency physicians, called for greater manipulative restrictions in Brian's left upper extremity than the ALJ allowed. *Id.* at 99-101, 111-13, 339-41, 343-46. Subsequent physical exams and a January 18, 2018 EMG (taken and reviewed by Dr. Boyd 1 day before Dr. Boyd completed his musculoskeletal questionnaire), moreover, showed that Brian's left upper extremity impairment had not improved. *See, e.g.*, *id.* at 720-21, 808, 821, 1930, 1977, 1985. Therefore, even if the ALJ had meant to incorporate her left upper extremity improvement discussion into her weighing of the January 2018 opinion, her conclusion that Brian's left upper extremity impairment had improved is not supported by substantial evidence in the record, as "no reasonable mind" would accept the ALJ's cited evidence as adequate to support a conclusion of improvement. *Biestek*, 139 S. Ct. at 1154.

In conclusion, the combination of the above errors warrants remand. While the Court is mindful of the "lax" standard the Seventh Circuit applies to the ALJ's weighing of treating

physicians' opinions, *see* Doc. [21] at 8-9 (collecting cases), the Seventh Circuit and treating physician regulations still require an ALJ who discounts a treating physician's opinion (for claims filed before March 27, 2017) to weigh the opinion according to the treating physician factors, 20 C.F.R. §§ 404.1527(c), 416.927(c), minimally articulate their reasons for discounting the opinion, *Stocks*, 844 F. App'x at 892 (citations omitted), and provide good reasons for doing so. *Walker*, 900 F.3d at 485. The ALJ's weighing of Dr. Boyd's January 2018 opinion did not meet those requirements. On remand, the ALJ shall reweigh Dr. Boyd's January 2018 opinion.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [20] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: June 1, 2021

_____
Sunil R. Harjani
United States Magistrate Judge